BLUE CROSS OF MASSACHUSETTS, INC., & another[1] *vs.*
COMMISSIONER OF INSURANCE.

Suffolk. May 5, 1986. — May 30, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & LYNCH, JJ.

*Medical Service Corporation. Commissioner of Insurance. Insurance*, Medical supplementary coverage. *Statute*, Construction. *Words*, "Periods," "Prospective subscribers."

Under G. L. c. 176A, § 1A, and c. 176B, § 5, the Commissioner of Insurance was not limited to reviewing merely the form of notice of open enrollment periods given to prospective subscribers by Blue Cross of Massachusetts, Inc., and Blue Shield of Massachusetts, Inc., but was empowered to review the substance of the insurers' notice of open enrollment and obliged to disapprove a proposal violative of the laws of the Commonwealth. [676-678]

Under G. L. c. 176A, § 1A, and c. 176B, § 5, requiring that Blue Cross of Massachusetts, Inc., and Blue Shield of Massachusetts, Inc., provide annual open enrollment "periods," all three active health care insurance plans offered ·by Blue Cross and Blue Shield under the brand name "Medex" had to be made available for open enrollment during the annual two-month enrollment periods. [678-680]

Under G. L. c. 176A, § 1A, and c. 176B, § 5, requiring Blue Cross of Massachusetts, Inc., and Blue Shield of Massachusetts, Inc., to provide annual open enrollment periods and proper notification to prospective subscribers, current subscribers to any one of the three active health care plans offered by Blue Cross and Blue Shield under the brand name "Medex" had to be permitted to upgrade or downgrade their coverage during the open enrollment periods. [680-681]

CIVIL ACTIONS commenced on January 3, 1986, in the Supreme Judicial Court for the county of Suffolk and in the Superior Court Department respectively.

Upon consolidation in the Supreme Judicial Court for the county of Suffolk, the case was reported by *Wilkins*, J.

[1] Blue Shield of Massachusetts, Inc.

*Edward J. Dailey* for the plaintiffs.

*Stephen S. Ostrach,* Assistant Attorney General, for the Commissioner of Insurance.

*Thomas I. Elkind & Robert H. Kelley* for Massachusetts Association of Older Americans & others, amici curiae, submitted a brief.

LIACOS, J. Blue Cross of Massachusetts, Inc. (Blue Cross), and Blue Shield of Massachusetts, Inc. (Blue Shield), provide health care insurance coverage under the brand name "Medex." Medex supplements the benefits provided by the Federal medicare program. Blue Cross and Blue Shield have offered Medex insurance since 1966. Three Medex plans currently are offered: Medex Standard, Medex 2, and Medex 3.[2] Medex 3 is the most comprehensive of the plans presently offered. It includes benefits for prescription drugs and private duty nursing care, and it has no requirement that the subscriber pay a preliminary deductible amount before the insurer will provide benefits for hospital or physician care. Medex 2 differs by providing no benefits for prescription drugs or private duty nursing. Medex Standard differs by requiring the subscriber to pay a deductible amount for hospital and physician care before benefits are provided.

Blue Cross and Blue Shield offer a ninety-day enrollment period to the Medex plans to all newly eligible Massachusetts residents.[3] In thirteen of the twenty years since Medex was introduced, Blue Cross and Blue Shield offered an open enrollment period. During the open enrollment period, eligible medicare beneficiaries who had not enrolled in Medex when they first became eligible were permitted to enroll.

---

[2] Pursuant to 211 Code Mass. Regs. § 47 (1980), a fourth plan, Medex 1, is no longer offered to subscribers. Those who purchased Medex 1 coverage before 1980 were permitted to maintain their insurance coverage under that plan. Medex 1 now covers 4,524 subscribers.

[3] Residents may be newly eligible through either of two circumstances. 1. They may be newly eligible for medicare benefits. Generally, reaching age sixty-five and retiring from work are the qualifications to become eligible. See 42 U.S.C. § 1395c (1982). 2. They may be medicare-eligible new residents of Massachusetts. The ninety-day enrollment period is open to new residents only if they were enrolled in a Blue Cross and Blue Shield plan outside Massachusetts.

The Legislature amended the statutes governing Blue Cross and Blue Shield by enacting St. 1984, c. 199. The statutes now contain the following language: "Any such corporation shall provide for annual open enrollment periods of not less than two months' duration. Proper notification shall be given to prospective subscribers in a form subject to approval by the commissioner." G. L. c. 176A, § 1A, and c. 176B, § 5 (1984 ed.).[4]

In December, 1985, Blue Cross and Blue Shield informed the Commissioner of Insurance (Commissioner) that they planned to offer a period of open enrollment in February and March, 1986. In this open enrollment period, Medex Standard and Medex 2 would be offered, but Medex 3 would not. Blue Cross and Blue Shield also indicated that they would not allow current subscribers to "upgrade" their coverage by enrolling in a more comprehensive Medex plan. The Commissioner disapproved the proposed open enrollment plan. In his opinion, the plan violated the statutory amendment quoted above. Blue Cross and Blue Shield sought review by this court.[5] A single justice of this court denied a request for a preliminary order to stay the Commissioner's disapproval.

The Commissioner's disapproval raises the following questions. (1) May the Commissioner disapprove, on substantive grounds, the notice of open enrollment? (2) Must Blue Cross and Blue Shield offer open enrollment to Medex 3 ? (3) Must Blue Cross and Blue Shield offer current subscribers to Medex the opportunity to upgrade their coverage during an open enrollment period ? We answer "yes" to each of these three questions.

A. *The Commissioner's authority to disapprove.* The Commissioner argues that his authority to review the substantive

---

[4] General Laws c. 176B, § 5, contains identical language except that the introductory modifier "any" is not present in c. 176B. Since the only corporations organized under the two statutes are Blue Cross and Blue Shield, the deletion of the modifier "any" is of no consequence in this case.

[5] See G. L. c. 231A, §§ 1, 2 (1984 ed.). A parallel action brought in the Superior Court pursuant to G. L. c. 176B, § 12 (1984 ed.), was transferred and consolidated with this action by a single justice of this court pursuant to G. L. c. 211, § 4A (1984 ed.).

provisions of the open enrollment period proposed by Blue Cross and Blue Shield is a necessary part of his power to approve the form of notification. The statutes provide that "[p]roper notification shall be given to prospective subscribers in a form subject to approval by the commissioner." G. L. c. 176A, § 1A, and c. 176B, § 5. Blue Cross and Blue Shield claim that the Commissioner has no such extensive power of review. In their view, the Commissioner's duty "is simply to review the form of notice."

The Commissioner suggests that, were the view of Blue Cross and Blue Shield to prevail, he would be relegated to the position of a stylistic editor or artistic critic of the typography of the notice. Blue Cross and Blue Shield offer no interpretation that explains what, other than stylistic criticism, a simple review of the form might entail. They say that a straightforward analysis based on the plain language of the statute is sufficient. We conclude that reading the statute in this way produces a result that is contrary to common sense and sound reason. Cf. *vanDresser* v. *Firlings*, 305 Mass. 51, 53-54 (1940) (Legislature is to be supposed to have intended to act in accordance with reason and common sense). We do not believe that the Legislature intended the Commissioner of Insurance to be merely a ministerial functionary whose tasks are to critique the style or layout of proposed public notices.

We have been faced before with the question of the Commissioner's power to review the substance of a proposal in the exercise of his duty to approve its form. We have held consistently that the Commissioner may disapprove the "form" of a proposal when its substance violates the laws of the Commonwealth. *Liberty Mut. Ins. Co.* v. *Commissioner of Ins.*, 395 Mass. 765, 771 (1985) (interpreting G. L. c. 175, § 113A). *American Family Life Assurance Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 472-475 (G. L. c. 175, § 110E), cert. denied, 464 U.S. 850 (1983). *Aetna Life Ins. Co.* v. *Hardison*, 199 Mass. 181, 186 (1908) (St. 1907, c. 576, § 75). Though our earlier decisions were not interpretations of G. L. c. 176A, § 1A, or c. 176B, § 5, those decisions are analogous, and the reasoning is applicable. We hold, therefore, that included

within the duties of the Commissioner is the power to review the substance of the insurer's notice of open enrollment and the obligation to disapprove a proposal violative of the laws of the Commonwealth.

B. *Open enrollment: Which plans*? Blue Cross and Blue Shield argue in their brief that we should infer the Legislature intended "that [extending open enrollment to] *any* Medicare supplementary plan which meets the Commissioner's minimum content regulations is sufficient to meet the open enrollment objectives of chapter 199" (emphasis in original). Because Blue Cross and Blue Shield could, if we agreed with their interpretation, choose which plan or plans to open for enrollment each year, the Commissioner responds that such an interpretation of the statute would render it nugatory. The Commissioner's view is that we must interpret the statute to require Blue Cross and Blue Shield to offer *all* plans for open enrollment, this being the legislative intent in guaranteeing every resident "the right to become a subscriber." G. L. c. 176A, § 1A, and c. 176B, § 5.

The dispute over the intent of the Legislature is best resolved by examining the statutory language itself. *Hoffman* v. *Howmedica, Inc.*, 373 Mass: 32, 37 (1977). *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974). *Commonwealth* v. *Welosky*, 276 Mass. 398, 401 (1931), cert. denied, 284 U.S. 684 (1932). The statutory language requires that Blue Cross and Blue Shield "shall provide for annual open enrollment *periods*" (emphasis supplied). G. L. c. 176A, § 1A, and c. 176B, § 5. "None of the words of a statute is to be regarded as superfluous . . . ." *Bolster* v. *Commissioner of Corps. & Taxation*, 319 Mass. 81, 84-85 (1946). *Commonwealth* v. *McCaughey*, 9 Gray 296, 297 (1857). We do not consider the Legislature's affirmative use of the plural form to be insignificant.

While we have, on occasion, interpreted singular forms to include the plural, or vice versa, see *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 49-50 (1975), and G. L. c. 4, § 6 (1984 ed.),[6] the interpretation of the plural form to include the

---

[6] General Laws c. 4, § 6, provides, in part: "Words importing the singular number may extend and be applied to several persons or things, words importing the plural number may include the singular."

singular has been to assure that the purpose of the statute may be fulfilled. However, "this rule is not one to be applied except where it is necessary to carry out the evident intent of the statute." *First Nat'l Bank* v. *Missouri*, 263 U.S. 640, 657 (1924). In the context of this statute, the plural form is meaningful.

We perceive three potential interpretations of the word "periods." The Legislature could have intended to indicate that the open enrollment is not to be merely a one-time occurrence. Thus viewed, c. 199 could be read to require not one open enrollment period, but as requiring Blue Cross and Blue Shield to provide open enrollment *periods* from time to time. This does not appear to have been the legislative intent, because the Legislature included the modifier "annual" in the statute. Clearly, provision of an annual period for enrollment negates the need to specify that the enrollment is to be more than a one-time event.

Another view is that the Legislature may have intended more than one open enrollment period be provided during each year. So, for example, a period of open enrollment would be offered in the spring and another in the fall. This is an unlikely meaning. The open enrollment periods must be at least two months long. G. L. c. 176A, § 1A, and c. 176B, § 5. The administrative burden of providing open enrollment for such a lengthy period for an unspecified number of times each year might well be great enough to overbalance the benefit to be gained by providing enrollees access to the plan no more than ten months sooner than they would have had access if only one period a year were required. The legislative history supports the conclusion that there need be no more than two months of open enrollment each year. The report of the Joint Committee on Health Care of the General Court states that the amendment passed as St. 1984, c. 199, "requires an annual open enrollment of two months." Thus the term "periods," not mentioned in the committee report, must refer to something other than the time each year that open enrollment must be provided.

We are left with the third possibility, that the term "periods" is plural because it refers not to the time that enrollment will

be open, but to what will be open for enrollment, that is, the insurance plans. We conclude that the Legislature intended that *each plan* have a two-month period of open enrollment annually. Thus, the corporations must provide for annual open enrollment *periods*, each period corresponding to a plan.

Though the statutory language does not compel the conclusion that all three available Medex plans must be open to enrollment (two plans, after all, require the use of the plural "periods" without requiring the addition of the third), we see no reason to presume that the Legislature intended simply that more than one plan be offered. The purpose of requiring open enrollment for more than one plan must have been to provide consumers the opportunity to choose the insurance coverage they wanted for themselves. Once having expressed that purpose, the Legislature, had it intended to limit the choice, could have indicated so affirmatively. In the absence of an indication to the contrary, we interpret the statute to extend to all available plans.[7] The Commissioner therefore correctly disapproved the open enrollment proposal.

C. *Open enrollment: Upgrades.* Blue Cross and Blue Shield say that the statute does not apply to current subscribers. Consequently, they claim no current subscriber should be permitted to enroll in a different plan. As we stated above, the open enrollment periods refer to the multiple plans. We must answer next the question, To whom are the open enrollment periods open? Again we turn to the statutory language. The statute requires that Blue Cross and Blue Shield "shall provide for annual open enrollment periods of not less than two months' duration. Proper notification shall be given to prospective sub-

---

[7] The reason advanced by Blue Cross and Blue Shield to justify their proposal not to offer open enrollment to Medex 3 is not consistent with the legislative intent. Blue Cross and Blue Shield based their decision in part on the increased costs to Blue Cross and Blue Shield of providing Medex 3 coverage. The Legislature provided a mechanism to assure that costs will be within the resources of the insurer. See G. L. c. 176A, § 6, and c. 176B, § 4 (1984 ed.). See also *Blue Cross of Mass., Inc.* v. *Commissioner of Ins., ante* 117 (1986) (1985 nongroup rates). Withholding a plan from certain residents of the Commonwealth is not an acceptable substitute for the proper administrative rate approval procedure.

scribers in a form subject to approval by the commissioner." G. L. c. 176A, § 1A, and c. 176B, § 5. Finding no language in the first sentence to explain the scope of the word "open," we examine the second sentence. To discern the meaning of words in a statute, we may "relate the words in question to the associated words and phrases in the statutory context. *Hodgerney* v. *Baker*, 324 Mass. 703, 706 (1949)." *Commonwealth* v. *Baker*, 368 Mass. 58, 68 (1975). It is "prospective subscribers" who are to be notified of the open enrollment periods. The question is whether status as a current subscriber to one Medex plan precludes status as a prospective subscriber to another plan.

The statute provides a definition of "subscribers." " ' Subscriber', a person who has subscribed to a non-profit medical service *plan* and to whom a subscription certificate has been issued in accordance with the provisions of section six" (emphasis supplied). G. L. c. 176B, § 1 (1984 ed.). Thus, a subscriber is tied to a *plan*.[8] If Medex as a whole were one plan, "current" subscribers would not be "prospective" subscribers, for we agree with Blue Cross and Blue Shield that in this context "prospective" refers to events in the future only. Medex, however, is not one plan, but four, of which three are available to be open for enrollment. Thus, a person could be a current subscriber to Medex 2, and not a current subscriber to Medex Standard or Medex 3. That person could subscribe at some future date to Medex Standard or Medex 3, and therefore would be a prospective subscriber to those plans. The statute, correctly interpreted, requires notice to all prospective subscribers, including current subscribers to other plans. The Legislature has indicated no intention to prevent any prospective subscribers, to whom notice must be given, from enrolling in any of the open plans. We hold, therefore, that current subscribers may enroll in other plans, either to "upgrade" or "downgrade" their coverage.

---

[8] General Laws c. 176B, § 1, also provides distinct definitions for the words "medical service corporation" and "nonprofit medical service plan." This buttresses our view that the word "subscriber" is related to a plan and not to a corporation such as Blue Cross or Blue Shield.

D. *Summary.* The Commissioner of Insurance has the power and the duty to disapprove Blue Cross and Blue Shield proposals for annual open enrollment periods when those proposals are in violation of Massachusetts law. The Commissioner may disapprove the proposals as part of his review of the insurer's form of notification to prospective subscribers. The statutes require that all three active Medex plans be made available for open enrollment during annual two-month enrollment periods. The statutes require that current subscribers be permitted to participate in the open enrollment periods to upgrade or downgrade their coverage.

A judgment shall enter in the county court declaring the rights of the parties consistent with this opinion.

*So ordered.*