JAMES A. FOSS, JR. vs. COMMONWEALTH.

Suffolk. May 8, 2002. - August 22, 2002.

Present: GREANEY, IRELAND, COWIN, SOSMAN, & CORDY, JJ.

*Statute,* Construction. *Administrative Law,* Agency's interpretation of statute. *Practice, Criminal,* Sentence. *Incompetent Person,* Commitment, Criminal charges.

General Laws c. 123, § 16(*f*), required the Department of Correction to calculate the period of the pendency of criminal charges against a defendant, who had been found incompetent to stand trial, on the basis of the single most serious crime charged and on the single maximum sentence allowable rather than on the basis of the maximum consecutive sentences of all of the crimes charged of equal seriousness. [586-587, 590-591]

Discussion of the legislative history of G. L. c. 123, § 16(*f*), relating to the commitment of criminal defendants who had been found incompetent to stand trial. [587-590]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 31, 2000.

The case was heard by *Spina,* J.

*Karen Owen Talley (George J. Duffy* with her) for the plaintiff.

*Valerie A. DePalma,* Assistant District Attorney (*Andrew Zeiberg,* Assistant District Attorney, with her) for the Commonwealth.

IRELAND, J. This case raises a question of statutory interpretation: Whether G. L. c. 123, § 16 (*f*), mandates the dismissal of charges pending against an incompetent criminal defendant on the final date of the period prescribed under the statute and computed on the basis of the maximum sentence for the single most serious crime charged or on the basis of the maximum consecutive sentences of all of the crimes charged of equal seriousness. The single justice, ruling on a petition under G. L. c. 211, § 3, concluded that the latter interpretation should apply and denied the petition. The petitioner (defendant) appealed

from the single justice's denial of relief, pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001).

We conclude that the plain meaning of G. L. c. 123, § 16 (*f*), requires the Department of Correction to calculate the period of the pendency of criminal charges against an incompetent defendant on the basis of the single most serious crime charged and on the single maximum sentence allowable. We remand the case to the county court where an order shall enter remanding to the District Court for further proceedings consistent with this opinion.

1. *Facts.* On October 26, 1993, James A. Foss, Jr., was arraigned in the Lynn District Court on three counts of indecent assault and battery on a child under the age of fourteen years, in violation of G. L. c. 265, § 13B. Immediately after arraignment, the defendant was evaluated and was found to be incompetent to stand trial. On December 13, 1993, the defendant was placed on indefinite pretrial probation in the custody of the Department of Mental Retardation and placed in one of its "respite program" facilities. The defendant has remained incompetent to stand trial and in such a facility since that time.

On August 8, 2000, the defendant filed a motion to dismiss the charges against him, pursuant to G. L. c. 123, § 16 (*f*), arguing that the statute requires dismissal of charges pending against an incompetent defendant on the expiration of a period of time "equal to the time of imprisonment which the person would have had to serve prior to becoming eligible for parole if he had been convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received." On September 27, 2000, a judge of the Lynn District Court held a hearing on the motion. On October 24, the judge denied the defendant's motion to dismiss and allowed the Commonwealth's oral motion for a reevaluation of the defendant's competence to stand trial.

On October 31, 2000, the defendant filed his petition for relief pursuant to G. L. c. 211, § 3. On January 5, 2001, while the matter was under advisement, the Department of Correction, pursuant to its authority under G. L. c. 123, § 16 (*f*), issued its computation and determination that the charges against the defendant were required to have been dismissed no later than

October 25, 1998. The single justice entered judgment on March 16, 2001, denying the defendant's request for relief. The defendant appealed.

2. *Discussion.* The words of a statute are the main source from which we ascertain legislative purpose, and when the text of a statute is clear and unambiguous, we construe the language in accordance with its plain and ordinary meaning. See *Commonwealth* v. *Ray,* 435 Mass. 249, 252 (2001), and cases cited. When the words are clear and, when assigned their ordinary meaning, yield a workable and logical result, we interpret the statute without resort to extrinsic aids, such as legislative history. See *Hashimi* v. *Kalil,* 388 Mass. 607, 610 (1983). General Laws c. 123, § 16 (*f*), reads, in pertinent part: "If a person is found incompetent to stand trial, the court shall send notice to the department of correction which shall compute the date of the expiration of the period of time equal to the time of imprisonment which the person would have had to serve prior to becoming eligible for parole *if he had been convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received, if so convicted*" (emphasis added). When the words "the most serious" are given their ordinary meaning and are used to modify the singular word "crime," their import is clear. Furthermore, when the word "maximum" is used to modify the singular word "sentence," the same result adheres.[1] The ordinary meaning of the words is that the Department of Correction must compute the period of time with reference to the single most serious crime charged, and the single maximum sentence allowable for that crime. When assigned their ordinary meaning, the words

---

[1]The Commonwealth cites G. L. c. 4, § 6, Fourth, providing that "[w]ords importing the singular number may extend and be applied to several persons or things," to support its proposition that the words "crime" and "sentence" should be read to include the plural number. We have interpreted the singular form to include the plural on occasion, however, we have done so "to assure that the purpose of the statute may be fulfilled." See *Blue Cross of Mass., Inc.* v. *Commissioner of Ins.,* 397 Mass. 674, 678-679 (1986), citing *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 49-50 (1975), and G. L. c. 4, § 6. "In the context of this statute, the [singular] form is meaningful." *Blue Cross of Mass., Inc.* v. *Commissioner of Ins., supra* at 679. See *Worcester Hous. Auth.* v. *Massachusetts Comm'n Against Discrimination,* 406 Mass. 244, 246-247 (1989).

"the most serious crime" and "the maximum sentence" yield a logical and workable result. In the thirty-two years since G. L. c. 123, § 16 (f), inserted by St. 1970, c. 888, § 4, was enacted, there have been several amendments to other portions of the mental health statute, however, there has been no suggestion that § 16 (f), as written, is illogical or unworkable.[2]

Furthermore, the Department of Correction calculates parole eligibility dates, and comparable "16 (f)" dates (as it did in this case) based on the maximum sentence allowable for the single most serious offense charged. We accord due weight and deference to an agency's interpretation of statutes within its charge. See *Hayes* v. *Retirement Bd. of Newton*, 425 Mass. 468, 470 (1997), and cases cited. We see no reason to disturb the Department of Correction's interpretation of the statute. Its interpretation accords the words their ordinary and plain meaning and achieves a logical and workable result. See Flaschner, The New Massachusetts Mental Health Code — A "Magna Carta" or a Magna Maze?, 56 Mass. L.Q. 49, 58 & n.17 (1971) (computation is with regard to the most serious crime with which the defendant was charged, "[n]ot for all the crimes with which he was charged").[3]

Although we need not resort to extrinsic aids to resolve the issue before us, the legislative history of G. L. c. 123, § 16 (f), also supports our interpretation. Prior to its enactment, it was not uncommon for incompetent defendants charged with minor crimes to be confined in maximum security facilities, such as Bridgewater State Hospital, for anywhere from a decade to a

---

[2] As the single justice correctly observed, the Commonwealth's argument that § 16 (f) applies only where the defendant has been committed has no merit. Section 16 (f) does not distinguish between defendants who have been committed and those who have not.

[3] We have held with respect to an agency interpretation of a statute, "[t]he basis for affording the contemporaneous interpretation deference is that the interpretation was made close to the time the Legislature enacted the statute and may represent 'understanding of the public regarding the enactment.' " *Connery* v. *Commissioner of Correction*, 414 Mass. 1009, 1010 (1993), quoting *Wilcox* v. *Riverside Park Enters., Inc.*, 399 Mass. 533, 539 n.14 (1987). Though commentary is not generally viewed in the same light as agency interpretation, its proximity in time to the enactment may also weigh in favor of its persuasiveness.

lifetime.[4] Empirical studies conducted at State hospitals in Massachusetts, Michigan, and Pennsylvania revealed that a finding of incompetence to stand trial was "tantamount to a life sentence for many criminal defendants." Morris, Out of Mind? Out of Sight: The Uncivil Commitment of Permanently Incompetent Criminal Defendants, 27 U.C. Davis L. Rev. 1, 4 (1993). A 1969 study in Massachusetts found that more men committed as incompetent to stand trial "had left Bridgwater as a result of death than all other avenues combined." McGarry, Demonstration and Research in Competency for Trial and Mental Illness: Review and Preview, 49 B.U. L. Rev. 46, 50 n.20 (1969).[5]

Legislators and legal and medical practitioners recognized the gravity of this and other problems afflicting the treatment and care of mentally ill and incompetent persons in Massachusetts, and sought to make significant changes as early as 1961. The Massachusetts Legislature established the Special Commission on Mental Health[6] in 1961 and directed "in particular [to] consider the laws relating to the methods of commitment, treatment and release of patients." Resolves 1961, c. 89. Subsequent resolves continued and expanded the scope of the commission's work, ending in the presentment of draft legislation in 1967.[7] See Resolves 1962, c. 117, c. 130; Resolves 1963, c. 55; Resolves 1965, c. 28; Resolves 1966, c. 1, c. 46, and c. 112.

---

[4]"In 1896, a twenty-four year old man charged with vagrancy was found incompetent to stand trial and committed to Bridgewater State Hospital . . . . There he remained until his death in 1959 at the age of eighty-seven. He was confined for sixty-three years without any criminal trial." Morris, Out of Mind? Out of Sight: The Uncivil Commitment of Permanently Incompetent Criminal Defendants, 27 U.C. Davis L. Rev. 1, 3 (1993).

[5]Dr. A. Louis McGarry succeeded Dr. Donald P. Kenefick as the director of the Special Commission on Mental Health, and the concerns addressed in his article undoubtedly were before the commission when addressing the proposed legislation. See McGarry, Demonstration and Research in Competency for Trial and Mental Illness: Review and Preview, 49 B.U. L. Rev. 46, 59-61 (1969) (discussing innovations sought in proposed legislation including terms of commitment).

[6]The full name of the commission was the Special Commission Established to Investigate and Study the Administration of the Department of Mental Health and Certain Other Matters.

[7]The proposed legislation was appended to the final report. 1967 Senate Doc. No. 1129 at 7.

Among many other problems studied and addressed in the new mental health laws was the pretrial commitment of incompetent criminal defendants. A major thrust was to eliminate the highly questionable practice of committing incompetent criminal defendants indefinitely, while awaiting their unlikely restoration to competency, and also eliminating the indefinite pendency of criminal charges that, most often, significantly limited the incompetent criminal defendant's access to treatment by more effective civil means. See Joost, Massachusetts Mental Health Code: Promise and Performance, 60 A.B.A. J. 95, 97 (1974) (discussing effects of new mental health code and 1965 Report of Special Commission); Walker, Mental Health Law Reform in Massachusetts, 53 B.U. L. Rev. 986, 986-987, 1004, 1007 (1973). The civil rights of committed persons was a major consideration of the Special Commission and its proposed legislation, which served as the basis of the health code revisions.[8] General Laws c. 123, § 16 (b) and (c), effectively eliminated the problem of the indefinite commitment of incompetent defendants, providing that "[a]n order of commitment . . . shall be valid for six months" and "[a]fter the expiration of a commitment under [§ 16 (b)], a person may be committed for additional one year periods . . . but no untried defendant shall be so committed unless . . . the court also finds said defendant is incompetent to stand trial." A committed, incompetent defendant is guaranteed reevaluation after the first six months and at least annually thereafter, with the presumption favoring competence. The statute also addresses the issue of indefinite pendency of criminal charges against an incompetent defendant, providing that "the court shall dismiss the criminal charges against [the incompetent criminal defendant]" on the final date of the period computed under § 16 (f).

An Illinois appellate court, interpreting a statute with similar wording in a case with similar facts concluded that the plain

---

[8]See Report of Special Commission on Mental Health, 1962 Senate Doc. No. 625 at 8-9; Report of Special Commission on Mental Health, 1967 Senate Doc. No. 1129 at 5; Flaschner, The New Massachusetts Mental Health Code: A "Magna Carta" or a Magna Maze?, 56 Mass. L.Q. 49, 50 n.3 (1971) (noting commission work formed the "module" for the new law, and that new drafts inserted "layer upon layer of legal safeguards against impairment of patients' civil rights").

meaning of the Illinois statute prohibited a parole eligibility calculation based on maximum consecutive sentences. See *Kulak* v. *Belletire*, 148 Ill. App. 3d 268 (1986). The court also squarely addressed the issue whether the statute permitted consecutive sentences where the defendant was charged with multiple counts of the same offense, and concluded that it did not, stating that if the Legislature had so intended it could have done so expressly by referring to the maximum sentence for the "class of the most serious offense." *Id.* at 273-274. We find this reasoning to be persuasive.

Although the Commonwealth's suggested reading of the statute would eliminate the problem of indefinite pendency of criminal charges, as a requirement of dismissal at the end of the period based on the maximum consecutive sentences would still yield a definite (albeit distant) date, the Commonwealth's reading fails to account for additional significant considerations underlying the revision of the mental health laws in Massachusetts. Studies conducted at Bridgewater State Hospital beginning in 1963 revealed that of approximately 200 men then indefinitely committed, the Bridgewater staff, with the assistance of the Law-Medicine Institute (conducting the study) were able to return fifty-three to trial. McGarrey, *supra* at 50-51. Of those returned for trial, thirty-five had been committed for less than two years. *Id.* at 51. The mean length of the hospitalization of the fifty-three men returned for trial was 3.7 years. *Id.* The mean length of the hospitalization of the 147 who were not able to return for trial was fifteen years. *Id.* The implications of the study demonstrate that a significant population of the men then not able to return for trial would have been competent within two years of their hospitalization. *Id.* Thus, it makes little sense for charges to remain pending against an incompetent defendant long past the period of time in which he is likely, if at all, to regain competence. See *State ex rel. Haskins* v. *County Court*, 62 Wis. 2d 250, 268 (1974) (it would be "a rather pointless and a cruel application of the law, as well as an additional burden on prosecutors and courts, to keep pending criminal charges that will never be brought to trial").

We conclude, in light of the considerations and recommendations before the Legislature at the time of its enactment, the

statute balances the interests of an incompetent defendant in dismissal of pending charges with the interests of the Commonwealth in protecting the public and enforcing the law by providing that the charges may remain pending for a period determined on the basis of the single most serious crime charged and the maximum sentence possible therefor.[9] The Legislature did not intend to calculate that period based on consecutive sentences.

It is uncontested that under the parole eligibility rules applicable to this offense (committed prior to July 1, 1994), the defendant, if convicted, would have been required to serve two-thirds of his minimum sentence. See G. L. c. 127, § 133, as amended through St. 1986, c. 486; G. L. c. 127, § 133, as amended by St. 1993, c. 432, §§ 11, 21. Therefore, the period to be calculated under § 16 (f) is two-thirds of the minimum sentence (as defined in G. L. c. 123, § 16 [f]) for the single most serious offense with which the defendant was charged.[10] The case is remanded to the county court where an order will enter remanding the case to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[9]We reach our conclusion as a matter of statutory interpretation, not as a matter of constitutional law. The Supreme Court of the United States left open the question whether an incompetent criminal defendant is entitled to dismissal of pending charges as a matter of due process in *Jackson* v. *Indiana*, 406 U.S. 715, 740 (1972). However, other courts have reached the issue, and most conclude that an incompetent criminal defendant does not automatically have a right to the dismissal of charges based solely on the fact that he is unlikely to regain his competence. The New Jersey Supreme Court reasoned that a dismissal based on such a determination "is purely prognostication," and "may simply turn out to be incorrect." *State* v. *Gaffey*, 92 N.J. 374, 386, 387 (1983). "Hence, if such a prediction is or can be wrong, other considerations, such as the protection of society and the public interest in effective law enforcement, militate strongly in favor of the right to continue or renew the prosecution or at least preserving the opportunity to do so." *Id.* at 387.

[10]The defendant's argument that because he has not been indicted and remains under the jurisdiction of the District Court, his maximum sentence is two and one-half years, see Reporters' Notes to Mass. R. Crim. P. 3 (b) (1), Mass. Ann. Laws, Rules of Criminal Procedure, at 134 (Lexis 2001), lacks merit. Section 16 (f) makes no mention of the charging instrument, and for good reason: if the defendant were tried on these charges, he would be tried in Superior Court. It would be wasteful to require grand jury indictment of incompetent defendants to avoid the District Court limitation, and we decline to do so.