Hand, J.
The appellant, C.B., has appealed his May 2, 2012 commitment to Bridgewater State Hospital (“BSH” or “hospital”) pursuant to G.L.c. 123, §§ 7 and 8 on the narrow ground that he was not a “patient” at BSH for the purposes of G.L.c. 123 (“statute”) at the time that the hospital’s medical director petitioned for that commitment. For the reasons stated below, we agree, and vacate the order of commitment.
The order C.B. appeals was dated May 2, 2012. Some review of the history between C.B. and the hospital puts this appeal in context. As of February, 2012, C.B. had criminal charges pending against him in the West Roxbury Division of the Boston Municipal Court Department. Having previously been found incompetent to stand trial on those charges, C.B. had been continuously committed to BSH since 2009 pursuant to G.L.c. 123, §16(c). On February 15,2012, as the expiration of C.B.’s then-current term of commitment approached, BSH filed a petition in the Brockton District Court for C.B.’s recommitment pursuant to G.L.c. 123, § 16(c).
On February 29, 2012, the court held a hearing on the hospital’s §16(c) petition for recommitment. The court’s first action was, properly, to determine whether C.B. was competent to stand trial.[1] After hearing, the court found that C.B. was not incompetent. This finding precluded the court from proceeding further on BSH’s recom-mitment petition under §16(c). Id. The court ordered that C.B. be returned to the West Roxbury Division for trial on the pending criminal charges.[2]
C.B. was not transported to the West Roxbury Division on February 29, 2012; *43 instead, he was detained at BSH in order to be transported to court the next morning. During the afternoon on February 29, 2012, several hours after C.B.’s competency hearing was completed, the hospital’s medical director filed a petition pursuant to G.L.c. 123, §7(b) seeking to commit C.B. to BSH under §7(b) of the statute. Section 7(b) applies to “any male patient at [Bridgewater State Hospital]” as “when it is determined that the failure to hospitalize [the patient] in strict security would create a likelihood of serious harm by reason of mental illness.” G.L.c. 123, §7(b).
The following day, C.B. was transported to the West Roxbury Division to address his open criminal charges. Those charges were dismissed. Based on the pending petition for commitment under §§7 and 8, however, C.B. was not released on the dismissal of these charges. Instead, he was returned to the hospital to await hearing on the commitment petition. C.B. subsequently moved to dismiss the §§7 and 8 petition on the grounds that, as of the time that the hospital’s §§7 and 8 petition was filed, C.B. was no longer a “patient” at BSH and so was not subject to commitment under those sections. The court issued a thoughtful written decision denying the motion, citing to the broad definition of “patient” included in G.L.c. 123, §1. On May 2,2012, the court committed C.B. to BSH for six months pursuant to G.L.c. 123, §8(b).
As familiar as C.B. may be to the clinicians at BSH, his status as a BSH “patient” does not survive the interruptions in his G.L.c. 123 commitments to that facility, particularly that occasioned by the court’s February, 2012 denial of the hospital’s request for recommitment under §16(b). Section 1 defines the term “patient” for the purposes of all sections of G.L.c. 123 as “any person with whom a licensed mental health professional has established a mental health professional-patient relationship.” In this case, the record establishes that C.B. had, as of February 29, 2012, “a mental health professional-patient relationship” with “a number of mental health professionals,” including psychiatrists and licensed clinical social workers.[3] While a literal reading of the G.L.c. 123, §1 definition of “patient” would include C.B. — and could, in fact, include anyone who had ever been a patient at BSH — the statute explicitly contemplates the need to interpret the statutorily defined terms in the context of a given case. Section 1 states: “The following words as used in this section [and in the remaining sections of G.L.c. 123] shall, unless the context otherwise requires, have the following meanings:...” In this case, despite C.B.’s significant history of BSH commitments, by the time BSH had filed its petition under §§7 and 8, C.B. was no longer being detained at BSH for any therapeutic purpose. Whatever his past history as a BSH “patient,” as of the time the §§7 and 8 petition was filed on the afternoon of February 29,2012, C.B. was simply a former patient then being held for transportation back to the court in which his open criminal case was pending, pur *44 suant to §16(b). This change in C.B.’s status did not leave BSH without recourse: the appropriate action would have been for the medical director of BSH (or any other physician or mental health provider authorized under the statute) to file a petition under G.L.c. 123, §12 for emergency restraint and hospitalization of C.B. as a person posing a risk of serious harm by reason of mental illness. See G.L.c. 123, §12 (authorizing designated medical and mental health providers with reason to believe that failure to hospitalize person would create likelihood of serious harm by reason of mental illness to restrain such person and to apply for three-day hospitalization). Having followed that procedure, BSH would then have had the ability to seek further commitment pursuant to §§7 and 8, as the §12 procedure would have established a new “mental health professional-patient relationship” between C.B. and the treatment providers in the facility in which he was committed under §12.
Having determined that C.B. was not a “patient” at BSH as of the date that the hospital filed the §§7 and 8 petition at issue here, we vacate the disputed commitment.
So ordered.

 The statute requires, as a prerequisite to recommitment under G.L.c. 123, §16(c), that a person first be found to be incompetent to stand trial. Section 16(c) states: “After the expiration of a commitment under paragraph (b) of this section, a person may be committed for additional one year periods under the provisions of sections seven and eight of this chapter, but no untried defendant shall be so committed unless in addition to the findings required by sections seven and eight the court also finds said defendant is incompetent to stand trial.”

 “If the person is not found incompetent, the court shall notify the court with jurisdiction of the criminal charges, which court shall thereupon order the defendant returned to its custody for the resumption of criminal proceedings.” G.L.c. 123, § 16(c).

 While G.L.c. 123, §1 does not define the term “mental health professional,” it does define “licensed mental health professional” as “any person who holds himself out to the general public as one providing mental health services and who is required pursuant to such practice to obtain a license from the commonwealth.” Both psychiatrists and licensed clinical social workers satisfy this definition. See G.L.c. 112, §2 (licensure and registration of physicians); G.L.c. 112, §8A (prohibiting use of title “physician” by one not registered with the Board of Registration in Medicine as a physician); G.L.c. 112, §§130-137 (licensure of social workers).