NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReportersjc.state.ma.us

SJC-12230

IN THE MATTER OF E.C.


Plymouth.      November 9, 2017. - March 15, 2018.

Present:  Gants, C.J., Gaziano, Lowy, & Budd, JJ.


Incompetent Person, Commitment.  Practice, Civil, Civil commitment.



Petition for civil commitment filed in the Brockton Division of the District Court Department on March 4, 2013.

The case was heard by Beverly J. Cannone, J., and a motion for reconsideration was also heard by her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.


Beth L. Eisenberg for E.C.
Edward J. O'Donnell for Bridgewater State Hospital.
Lester D. Blumberg, for Department of Mental Health, amicus curiae, submitted a brief.


GAZIANO, J.  In this appeal, we consider whether the dismissal of the criminal charge pending against the respondent, E.C., required his release from commitment to Bridgewater State Hospital (Bridgewater), where the charge was dismissed after the

period of commitment had expired, and a petition to extend the commitment had yet to be decided.

E.C. was charged in the Boston Municipal Court Department with malicious destruction of property. Following a hearing pursuant to G. L. c. 123, § 16 (b), a judge of that court found E.C. not competent to stand trial and ordered him committed to Bridgewater for a period of six months. After that period had expired, Bridgewater filed a petition in the District Court Department to extend the commitment for an additional period of one year, pursuant to G. L. c. 123, § 16 (c). While the petition for an extension was pending, the criminal charge against E.C. was dismissed. Bridgewater moved to file an amended petition to modify its pending G. L. c. 123, § 16 (c), petition to a petition for civil commitment pursuant to G. L. c. 123, §§ 7 and 8. E.C. opposed the motion and argued that Bridgewater was required to release him because the criminal charge had been dismissed. A District Court judge concluded that Bridgewater had no authority to hold E.C. pursuant to G. L. c. 123, § 16 (c), after the criminal charge had been dismissed and his original commitment had expired; denied Bridgewater's petition to amend; and ordered E.C. discharged.[1] The Appellate

_____

[1] Although the issues in this case are moot as to E.C., who was released before this case was argued, we consider the matter because the case involves an important question of statutory

Division of the District Court affirmed that judgment, and the Appeals Court reversed. See Matter of E.C., 89 Mass. App. Ct. 813 (2016). We allowed E.C.'s application for further appellate review.

We conclude that the dismissal of criminal charges does not require the immediate release from commitment of an incompetent defendant, and that Bridgewater retained the statutory authority to hold E.C. while the G. L. c. 123, § 16 (c), petition was pending. See G. L. c. 123, § 6.[2] We conclude also that the District Court judge abused her discretion in denying Bridgewater's request to amend its pending petition for an extension under G. L. c. 123, § 16 (c), to a petition for civil commitment under G. L. c. 123, §§ 7 and 8.

---

interpretation and is "capable of repetition, yet evading review." See Guardianship of Doe, 391 Mass. 614, 618 (1984) ("issues which involve the rights of the mentally ill are classic examples of issues that are capable of repetition, yet evading review" [quotations omitted]); Hashimi v. Kalil, 388 Mass. 607, 609 (1983).

[2] "No person shall be retained at a facility or at the Bridgewater [S]tate [H]ospital except under the provisions of [G. L. c. 123, §§ 10 (a), 12 (a), (b), and (c), 13, 16 (e), and 35,] or except under a court order or except during the pendency of a petition for commitment or to the pendency of a request under section fourteen. A court order of commitment to a facility or to the Bridgewater [S]tate [H]ospital shall be valid for the period stipulated in this chapter or, if no such period is so stipulated, for one year. A petition for the commitment of a person may not be issued except as authorized under the provisions of this chapter." G. L. c. 123, § 6 (a).

1.  Background.  The following facts are not disputed.  In May, 2012, E.C. was arraigned in the Boston Municipal Court on one count of malicious destruction of property over $250.00.  In July, 2012, a psychologist testified that E.C. was not competent to stand trial.  A Boston Municipal Court judge ordered E.C. transferred to Bridgewater for further evaluation of his competency, pursuant to G. L. c. 123, § 15 (b).  In August, 2012, Bridgewater reported that E.C. was not competent to stand trial; the Commonwealth stipulated to his incompetency.  The judge ordered E.C. returned to Bridgewater for a thirty-five day hospitalization, pursuant to G. L. c. 123, § 16 (a).  Bridgewater then petitioned the court to commit E.C. for a period of six months, pursuant to G. L. c. 123, § 16 (b).  The petition was allowed, and E.C.'s commitment to Bridgewater was authorized until March, 2013.

Shortly prior to the expiration of the six-month commitment period, Bridgewater filed a petition in the Brockton Division of the District Court Department to extend E.C.'s involuntary commitment for a period of one year, under G. L. c. 123, § 16 (c).[3]  A hearing on that petition was scheduled for March,

_____

[3] The Brockton Division of the District Court Department is designated to hear all civil commitment proceedings involving a commitment to Bridgewater State Hospital (Bridgewater).  See G. L. c. 123, § 5; G. L. c. 218, § 43.  See also G. L. c. 123, §§ 8 (f), 13.

2013. At a hearing in the Boston Municipal Court one week before the hearing scheduled on Bridgewater's petition for a renewed commitment, E.C. filed a motion to dismiss the criminal charge. The Boston Municipal Court judge continued the hearing until the following day, and E.C. waived his right to be present. The next day, the judge allowed E.C.'s motion to dismiss, over the Commonwealth's objection.

One week later, the scheduled hearing was held in the District Court on Bridgewater's petition pursuant to G. L. c. 123, § 16 (c), to continue the commitment. A judge of that court allowed E.C.'s motion for funds for an independent medical examiner and continued the hearing for approximately three weeks. The day after the hearing, immediately after learning that E.C.'s criminal charge had been dismissed, Bridgewater filed a motion to amend the petition for an extension of commitment from a G. L. c. 123, § 16 (c), petition to a petition for civil commitment under G. L. c. 123, §§ 7 and 8.[4] Bridgewater told the District Court judge that it had not been informed that E.C.'s criminal charge had been dismissed until six days after the dismissal. Bridgewater argued that the

---

[4] Bridgewater also filed a new petition for commitment under G. L. c. 123, §§ 7 and 8, but withdrew that petition after its motion for amendment was denied.

amendment was authorized by G. L. c. 123, § 16 (c),[5] which allows
for a civil commitment proceeding after criminal charges have
been dismissed.  E.C. opposed Bridgewater's motion, arguing that
the dismissal of the criminal charge terminated his commitment
under G. L. c. 123, § 16 (b).  The judge denied Bridgewater's
motion, finding that G. L. c. 123, § 16, no longer served as a
valid basis for detaining E.C. after the criminal charge had
been dismissed and, therefore, that E.C. was not a "patient" of
Bridgewater for purposes of a commitment petition under G. L.
c. 123, §§ 7 and 8.  A few days later, still in March, 2013,
E.C. was discharged.

Bridgewater filed a motion for reconsideration of the
denial of its motion to amend; the motion was denied in March,
2013.  The Appellate Division of the District Court affirmed
that decision in November, 2014.  In August, 2016, the Appeals

---

[5] "After the expiration of a commitment under paragraph (b)
of this section, a person may be committed for additional one
year periods under the provisions of [§§ 7 and 8] of this
chapter, but no untried defendant shall be so committed unless
in addition to the findings required by [§§ 7 and 8] the court
also finds said defendant is incompetent to stand trial.  If the
person is not found incompetent, the court shall notify the
court with jurisdiction of the criminal charges, which court
shall thereupon order the defendant returned to its custody for
the resumption of criminal proceedings.  All subsequent
proceedings for the further commitment of a person committed
under this section shall be in the court which has jurisdiction
of the facility or hospital."  G. L. c. 123, § 16 (c).

Court reversed the decision of the Appellate Division. We allowed E.C.'s petition for further appellate review.

2. Discussion. a. Statutory background. When a criminal defendant is suspected of being incompetent to stand trial, a court may order the defendant to be evaluated by a court-appointed medical professional for an initial determination of competency. See G. L. c. 123, § 15 (a). If the initial determination is that the defendant appears to be incompetent and further examination is necessary, a judge may order the defendant committed to a mental health facility[6] for a period of observation not to exceed twenty days. See G. L. c. 123, § 15 (b). If he requires strict security, a male defendant may be hospitalized at Bridgewater for this twenty-day period. See id.

During the period of observation, or within sixty days of a determination that a defendant is not competent to stand trial, the district attorney or the medical director of Bridgewater may petition for the individual to be committed to Bridgewater for an initial treatment period of six months. See G. L. c. 123, § 16 (b). The petition will be granted if the judge finds that

---

[6] General Laws c. 123, § 1, defines "[f]acility," for purposes of G. L. c. 123, §§ 2 to 37, as "a public or private facility for the care and treatment of mentally ill persons, except for the Bridgewater State Hospital".

the standard for involuntary civil commitment under G. L. c. 123, § 8 (b), has been met: "(1) such person is mentally ill; (2) such person is not a proper subject for commitment to any facility of the department; and (3) the failure to retain such person in strict custody would create a likelihood of serious harm." If the criminal charges are dismissed after commitment, an untried defendant may continue to be held under G. L. c. 123, § 16 (b).

At the end of the six-month period, the medical director of Bridgewater may file a petition under G. L. c. 123, § 16 (c), seeking to have the individual committed for an additional period of one year under the procedures of G. L. c. 123, § 7; as with the petition for an initial treatment period, the petition for this additional period may be allowed where there is a finding under G. L. c. 123, § 8 (b), that "(1) such person is mentally ill; (2) such person is not a proper subject for commitment to any facility of the department; and (3) the failure to retain such person in strict custody would create a likelihood of serious harm."

b. Analysis. E.C. argues that, upon dismissal of the criminal charges, a petition for an extension of commitment under G. L. c. 123, § 16 (c), must be dismissed immediately, because the predicate for holding a former defendant -- to determine if the defendant may be returned to competency and

stand trial -- has evaporated.  Bridgewater contends that the over-all statutory scheme of G. L. c. 123 supports a conclusion that the authority to hold an untried former defendant, who has been found incompetent, does not evaporate when criminal charges are dismissed, and that it should have been allowed to amend its G. L. c. 123, § 16 (c), petition to a petition for commitment under G. L. c. 123, §§ 7 and 8.

"Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Sheehan v. Weaver, 467 Mass. 734, 737 (2014), quoting Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010).  "We construe statutes according to the Legislature's intent as expressed in the words of the statute and read in light of the ordinary and approved usage of the language. . . .  At the same time, a statute should be read as a whole to produce an internal consistency" (citations and quotations omitted).  Felix F. v. Commonwealth, 471 Mass. 513, 516 (2015).

We begin with the statutory language.  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent."  Malloch v. Hanover, 472 Mass. 783, 788 (2015), quoting Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008).  If the words used are not otherwise defined in the statute, we afford them their plain and ordinary

meaning. Commonwealth v. Keefner, 461 Mass. 507, 511 (2012). "To the extent there is any ambiguity in the statutory language, we turn to the legislative history" as a guide to legislative intent. Ajemian v. Yahoo!, Inc., 478 Mass. 169, 182 (2017). Where, as here, the statutory language is ambiguous or "faulty or lacks precision, it is our duty to give the statute a reasonable construction." Keefner, supra, quoting Capone v. Zoning Bd. of Appeals of Fitchburg, 389 Mass. 617, 622 (1983).

To determine the Legislature's intent with respect to the specific provisions of G. L. c. 123, 16 (c), we consider more generally the legislative history of G. L. c. 123, which was enacted to protect individuals with mental illness. "Prior to [c. 123's] enactment, it was not uncommon for incompetent defendants charged with minor crimes to be confined in maximum security facilities, such as Bridgewater . . . , for anywhere from a decade to a lifetime." Foss v. Commonwealth, 437 Mass. 584, 587-588 (2002). See Kirk v. Commonwealth, 459 Mass. 67, 70-71 (2011). The reform of the Commonwealth's mental health system addressed the then often-lengthy pretrial commitment of incompetent defendants. See Kirk, supra; Foss, supra at 587-589. General Laws c. 123, § 16 (b) and (c), "effectively eliminated the problem of the indefinite commitment of incompetent defendants, providing that '[a]n order of commitment . . . shall be valid for six months' and '[a]fter the

expiration of a commitment under [G. L. c. 123, § 16 (b)], a person may be committed for additional one year periods . . . but no untried defendant shall be so committed unless . . . the court also finds said defendant is incompetent to stand trial.'" Foss, supra at 589.

An individual who is committed to Bridgewater as an incompetent defendant is guaranteed regular review of his status, "with the presumption favoring competence." Id. In the case of an incompetent defendant, the government has a compelling interest in determining whether an individual may be returned to competency and thereafter be tried as competent, and the individual, too, has a compelling interest in not being tried if incompetent. When criminal charges are dismissed, the government's interest in protecting the individual and the public remains, but the calculus is different. The provisions of G. L. c. 123 balance the rights of and protections for incompetent persons with the Commonwealth's interest in "protecting the public from potentially dangerous persons" who may be unable to control their actions because of their mental condition. See Commonwealth v. Calvaire, 476 Mass. 242, 246 (2017). "[L]aws in derogation of liberty," however, must be narrowly tailored to further a compelling and legitimate government interest, and must be strictly construed, in order to comply with the requirements of substantive due process

(citation omitted).  Commonwealth v. Libby, 472 Mass. 93, 96 (2015).  "The right of an individual to be free from physical restraint is a paradigmatic fundamental right."  Commonwealth v. Knapp, 441 Mass. 157, 164 (2004).  We evaluate E.C.'s claims against this backdrop, therefore, to ensure that the Commonwealth's actions are narrowly construed to protect both the individual and the public interest.

We turn, first, to the denial of Bridgewater's motion to amend its petition for an extension of commitment, filed under G. L. c. 123, § 16 (c), to a petition for civil commitment under G. L. c. 123, §§ 7 and 8.  The judge's decision to deny Bridgewater's motion to amend is reviewed under an abuse of discretion standard.  See Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 291 (1977).  The rules of civil procedure "eliminated the once broad discretionary authority of a judge to deny a motion to amend."  Id. at 289.  A judge abuses his or her discretion in denying a motion to amend where the denial reveals an error of law.  See Channel Fish Co. v. Boston Fish Mkt. Corp., 359 Mass. 185, 188 (1971).

We conclude that, here, the judge abused her discretion in declining to allow Bridgewater to amend its petition for an extension of commitment to a petition under G. L. c. 123, §§ 7 and 8, a motion that Bridgewater filed immediately upon

learning that E.C.'s criminal charge had been dismissed.[7]  The judge denied the motion to amend because she concluded that the petition for an extension of commitment under G. L. c. 123, § 16 (c), was void after the criminal charge had been dismissed, and thus that no motion to amend a petition that itself was void could be allowed.  The determination that the dismissal of the criminal charge against E.C. necessarily ended Bridgewater's authority to hold him under G. L. c. 123, § 6, and required both dismissal of a void petition for an extension of that commitment and E.C.'s immediate release, however, was an error of law.

Once Bridgewater had filed its petition for an extension of commitment under G. L. c. 123, § 16 (c), Bridgewater had the statutory authority to hold E.C. under G. L. c. 123, § 6, which provides:  "No person shall be retained at a facility or at [Bridgewater] . . . except under a court order or except during the pendency of a petition for commitment . . ." (emphasis supplied).  In light of the entirety of the statutory scheme for commitment of untried defendants, we conclude that the dismissal of criminal charges does not require immediate release from commitment under G. L. c. 123, § 16 (c).  Therefore, Bridgewater

---

[7] Had Bridgewater delayed in filing its motion to amend, due process might require a different result; we leave that question for another day, when the situation is before us.

retained authority to hold E.C. under G. L. c. 123, § 6, while its G. L. c. 123, § 16 (c), petition was pending.

General Laws c. 123, § 7 (b), grants the medical director of Bridgewater the authority to "petition the [D]istrict [C]ourt . . . for the commitment to [Bridgewater] of any male patient at said . . . hospital when it is determined that the failure to hospitalize in strict security would create a likelihood of serious harm by reason of mental illness." Therefore, following the dismissal of the criminal charge against him, Bridgewater had the authority to hold E.C. under G. L. c. 123, § 6, while the G. L. c. 123, § 16 (c), petition was pending. The medical director's authority to petition for E.C.'s commitment under G. L. c. 123, § 7, remained intact following the dismissal of the criminal charge.

Another provision of G. L. c. 123, § 16, supports our reading that Bridgewater had authority to hold E.C. pending a hearing on its petition under G. L. c. 123, §§ 7 and 8. General Laws c. 123, § 16 (f), requires that criminal charges against a committed person who is incompetent to stand trial be dismissed after the date when a competent defendant would have been eligible for parole; it does not state, however, that the person immediately must be released from commitment. Similarly, G. L. c. 123, § 16 (e), envisions continuing commitment at a facility following the dismissal of criminal charges. See id. ("Any

person committed to a facility under the provisions of this section may be restricted in his movements to the buildings and grounds of the facility at which he is committed by the court which ordered the commitment . . . . This paragraph shall not apply to persons originally committed after a finding of incompetence to stand trial whose criminal charges have been dismissed").

This continuing authority of Bridgewater to hold E.C. briefly pending a hearing on its motion to amend did not, as E.C. contends, constitute a violation of due process. Significantly, the procedures that Bridgewater would be required to follow in pursuing a petition under G. L. c. 123, § 16 (c), to extend an incompetent defendant's commitment are the same as those that must be followed in pursuing a petition under G. L. c. 123, §§ 7 and 8. Due process and the statutory provisions would require Bridgewater to provide an incompetent individual with notice and a hearing on a G. L. c. 123, § 16 (c), petition, just as it would for a petition under G. L. c. 123, §§ 7 and 8, and all of the same rights, such as the rights to an attorney, to cross-examine witnesses, and to introduce evidence, are applicable at each of those hearings. Cf. Coffin v. Superintendent, Mass. Treatment Ctr., 458 Mass. 186, 189 (2010).

E.C. is correct that, in contrast to a petition for an extension of commitment under G. L. c. 123, § 16 (c),

incompetency to stand trial would no longer be an issue, or a necessary preliminary finding, in a petition pursuant to G. L. c. 123, §§ 7 and 8. While the statutory protections of G. L. c. 123, § 16 (c), are not applicable where no criminal charges are pending, an individual's due process rights also are protected at a hearing under G. L. c. 123, §§ 7 and 8. The Commonwealth is required to prove, beyond a reasonable doubt, that (1) the individual has a mental disorder that grossly impairs the individual's "ability to meet the ordinary demands of life"; (2) failure to retain the individual in strict security at Bridgewater would create a likelihood of serious harm to the person or others; and (3) no less restrictive alternative than confinement at Bridgewater would be sufficient to protect the individual and others. Commonwealth v. Nassar, 380 Mass. 908, 912-913 & n.6, 916 (1980). See, e.g., Hashimi v. Kalil, 388 Mass. 609, 609-610 (1983). Cf. Coffin, 458 Mass. at 189.

None of the due process protections that G. L. c. 123 was adopted to protect is offended by Bridgewater's authority to pursue a petition for commitment under G. L. c. 123, §§ 7 and 8, of an individual who formerly had been committed under G. L. c. 123, §§ 15 and 16. Here, E.C. was committed properly under G. L. c. 123, §§ 15 and 16 (a), his hospitalization was extended properly under G. L. c. 123, § 16 (b), and he was held

appropriately under G. L. c. 123, § 6 (a), after the criminal charge had been dismissed. He could not have been held indefinitely; G. L. c. 123, § 7 (c), requires a hearing to be conducted within fourteen days of a petition being filed,[8] and, as noted, the procedural protections of G. L. c. 123, §§ 7 and 8, would apply at that hearing.

E.C.'s argument that the dismissal of the criminal charge terminated Bridgewater's authority to hold him under G. L. c. 123, § 16, is unavailing. Because G. L. c. 123, § 16 (c), does not address the procedure to follow if criminal charges are dismissed while a petition for recommitment is pending, we look to other provisions in the statute for guidance. See Phillips v. Pembroke Real Estate, Inc., 443 Mass. 110, 116-117 (2004). General Laws c. 123, § 16 (b), which governs the initial commitment to Bridgewater that a G. L. c. 123, § 16 (c), petition seeks to extend, provides that "the petition for the commitment of an untried defendant shall be heard only if the

---

[8] We note that both G. L. c. 123, § 16, and G. L. c. 123, § 7, impose strict limits on the time during which a petition may be pending before a hearing must be conducted, and any violation of those limits would risk running afoul of due process protections. Here, Bridgewater timely filed its motion to amend within one day of receiving notice of dismissal of the charge. Any delay in filing a motion to amend, regardless whether due to a delay of "notification" of the dismissal, would risk due process violations; Bridgewater, as custodian of an incompetent individual, bears the burden of prompt filing of a motion to amend a G. L. c. 123, § 16 (c), petition, or a motion for civil commitment.

defendant is found incompetent to stand trial, <u>or if the criminal charges are dismissed after commitment</u>" (emphasis added).

Given this, E.C.'s suggestion that immediate release from commitment is mandated if criminal charges are dismissed during the pendency of a G. L. c. 123, § 16 (<u>c</u>), petition would be inconsistent with the Legislature's stated understanding, as evidenced in G. L. c. 123, § 16 (<u>b</u>), that untried criminal defendants whose charges are dismissed may require further treatment because they present a danger to the community. Moreover, E.C.'s proposed reading of the statute would create an absurd and inconsistent result; reading the statute under his view, if charges against a defendant are dismissed while the defendant is committed on a G. L. c. 123, § 16 (<u>b</u>), petition, Bridgewater could petition for an extended commitment under G. L. c. 123, §§ 7 and 8, while, if the charges were dismissed during a commitment pursuant to a G. L. c. 123, § 16 (<u>c</u>), petition, a defendant would have to be released immediately. Nothing in the structure or purposes of G. L. c. 123, § 16 (<u>b</u>) and (<u>c</u>), supports this conclusion; to the contrary, both provisions allow for commitment of incompetent defendants, under specific circumstances.

Allowing amendment of a pending G. L. c. 123, § 16 (<u>c</u>), petition to a petition under G. L. c. 123, §§ 7 and 8, does not

offend an individual's fundamental right to due process.  Where a petition under G. L. c. 123, § 16 (c), is pending, that individual necessarily has been found incompetent to stand trial at a proceeding under G. L. c. 123, § 16 (a), where due process protections were provided.

3.  Conclusion.  The judgment of the District Court judge is reversed, and the matter is remanded for entry of an order consistent with this opinion.

So ordered.