JOHN FOLEY, JR. *vs.* COMMONWEALTH.

Suffolk. March 4, 1999. - April 30, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Arraignment. *Bail. Moot Question. Constitutional Law,* Public trial.

This court concluded that criminal arraignment sessions and bail hearings conducted at a correctional facility were properly authorized by the Chief Justice of the District Court Department pursuant to G. L. c. 218, § 43A, and were properly accessible to the public. [498-501]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 2, 1998.

The case was heard by *Ireland,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Cathryn A. Neaves,* Assistant Attorney General, for the Commonwealth.

WILKINS, C.J. The plaintiff filed a complaint in the Supreme Judicial Court for the county of Suffolk, alleging that he had been unlawfully arraigned on certain criminal complaints at the Plymouth County correctional facility (facility) and seeking relief under the general superintendence authority of this court. G. L. c. 211, § 3. He contends that he was entitled to an arraignment and bail hearing "in public and open court at the times and places prescribed by law" and that the proceeding at the facility did not meet those requirements. A single justice disagreed, ruling that the Chief Justice of the District Court Department had statutory authority to authorize arraignment sessions at the facility, and judgment was entered denying relief. The plaintiff appealed.[1]

On August 19, 1997, in response to a request from the

---

[1]The single justice reached the merits of the plaintiff's claim, passing by the alternative ground for denying relief that the plaintiff raised no objection to the circumstances when he was arraigned.

Regional Administrative Judge for Region I (which includes Plymouth County), the Chief Justice of the District Court Department authorized the holding of formal court sessions of the Brockton, Hingham, Plymouth, and Wareham Divisions of the District Court Department at the facility. The Chief Justice purported to act pursuant to G. L. c. 218, § 43A, which permits him to "authorize any justice . . . to hold a session of any division . . . elsewhere, in order to promote the speedy dispatch of the court's business." Section 43A does not require that the Chief Justice make any formal findings of fact in support of his decision, and he made none.[2]

Arraignment sessions are held at the facility on the first court day after a weekend (on Monday unless it is a holiday) in order to provide an economically and administratively efficient system of handling arraignments. In 1995, the county sheriff commenced a system of housing persons at the facility who were arrested in the course of a weekend and could not make bail or who were arrested on outstanding warrants. On the next court day, the sheriff's personnel would transport these people (numbering on average from fifteen to thirty) to the four respective District Courts for arraignment and then back to the facility if a person was not released on bail, or otherwise. The logistic merits of eliminating the transportation of prisoners by holding an arraignment session at the facility are obvious. Whether the practice is lawful is a different matter.

The plaintiff was charged in the Plymouth District Court with certain offenses and taken to the facility on January 25, 1998 (a Sunday). He was arraigned there the next day. On February 2, in the Plymouth District Court, a judge revoked a no bail order and set bail for him. The plaintiff agrees that his case is moot. The plaintiff's challenge raises an issue of wide significance that will arise repeatedly and will not easily be resolved on appeal in other cases before becoming moot. It is appropriate for us to reach the merits of the challenge to arraignments at the facility. See *Mendonza* v. *Commonwealth*, 423 Mass. 771, 777

---

[2]The record does not include a statement of agreed facts. Most, but not all, facts appear not to be in dispute. To the extent they are, we adopt the facts asserted by the Commonwealth. As an appellant, the plaintiff must suffer the consequences of any deficiency in the record. A statement of agreed facts in a general superintendence matter in the county court likely to be brought to the full court is most desirable. If such an agreement cannot be reached, the single justice might well conclude that the case should be transferred to a trial court for determination. See G. L. c. 211, § 4A.

(1996); *Commonwealth* v. *Yameen,* 401 Mass. 331, 333 (1987), cert. denied, 486 U.S. 1008 (1988); *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 782-783 (1984), and cases cited.

The plaintiff advances various challenges to the arraignment procedure. He argues that arraignments at the facility violate the State and Federal Constitutions and statutory requirements. We should first make clear what is not before us. All arraignments must be in open court. Mass. R. Crim. P. 7 (d) (1), 378 Mass. 855 (1979). Mass. R. Crim. P. 12 (a) (1), 378 Mass. 866 (1979). The Commonwealth agrees and intends that the proceedings at the facility be open to the public as with any other court proceeding. Therefore, constitutional considerations bearing on the right to close a courtroom to the public are not involved in this case. See *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 606-607 (1982); *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court,* 421 Mass. 502, 506-507 (1995); *Commonwealth* v. *DeBrosky,* 363 Mass. 718, 721-722 (1973). This case also does not present any question concerning the use of the facility in lieu of municipal lockups. See G. L. c. 126, § 4 (authorizing use of jails to detain persons arrested without a warrant if there is no adequately equipped municipal lockup); G. L. c. 40, § 34 (requiring municipal lockups in towns of more than 5,000 inhabitants).

We also do not decide whether notice of the proceedings at the facility, including notice of the time at which the sessions are held, was constitutionally adequate. The plaintiff did not raise this issue in its fullest form before the single justice, and the record is not complete on this point. We discuss it only on general principles. We may fairly assume that the permission for the public to visit the facility required by G. L. c. 127, § 37 (if indeed any "visit" to the facility is involved), has been given because the sheriff has encouraged the program. We do not know, however, what signs are available to guide the public to the courtroom and to assure them that they have a right of free access. There may well not be proper notices posted at the respective District Court houses stating what specific arraignments are to be held at the facility and, most important, the time at which any session will commence. See G. L. c. 218, § 15 (requiring posting in respective District Court clerks' offices in conspicuous place of hours of court business).

The public, interested and disinterested, is entitled to and must be permitted to attend the proceedings. See *Globe*

*Newspaper Co.* v. *Superior Court, supra* at 603-606. "The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." (Emphasis in original.) *Press-Enter. Co.* v. *Superior Court,* 478 U.S. 1, 13 (1986), quoting *Press-Enter. Co.* v. *Superior Court,* 464 U.S. 501, 508 (1984). The arraignment sessions held at the facility do not violate these constitutional principles.

The physical layout of the place in which the arraignments are held and its accessibility to the public are important considerations in deciding whether the proceedings conducted there are properly public. The room in which the arraignments are held looks like a courtroom. There is a raised platform and desk for the judge. Each defendant stands at a podium during arraignment. The clerk, probation officer, and counsel have tables. There are approximately fifty chairs for spectators. There are windows without bars. There is a space for attorneys to meet with their clients. Each affected person who is booked signs an acknowledgment that he will be arraigned at the correctional facility on the next court business day and that "my counsel, attorney, witnesses, family, friends, etc., will be allowed to attend these court proceedings that are being held at this facility." Arraignment sessions commence at approximately noon.

The room used as a courtroom is outside the secured housing areas of the facility, but inside a perimeter wall. Visitors seeking the courtroom enter the front lobby, walk down a hallway, make two turns, and go along a short hallway to the courtroom. There is a metal detector in the hallway. Visitors are not searched, are not required to sign in or provide information, and do not pass through any locked doors. Arraignment sessions have had spectators in attendance, including members of the press. No one has been turned away. Correctional facility staff provide security in the courtroom. It is not shown that visitors are subjected to more scrutiny than at the entrance of any other

courthouse in the Commonwealth.[3]

The plaintiff argues further that the Chief Justice of the District Court Department did not have the power to authorize court sessions at any correctional institution without first making a finding that public convenience requires such an action. The plaintiff relies on G. L. c. 218, § 1, to support this argument. The First Justice of the Brockton District Court on his own is authorized by G. L. c. 218, § 1, to adjourn the court, whenever the public convenience makes it expedient, to the Massachusetts Correctional Institution at Bridgewater. We see no implication in that grant of authority that the Chief Justice of the District Court Department, under G. L. c. 218, § 43A, may not permit arraignment sessions outside the secured housing area of a correctional facility or that formal findings of fact are required before such sessions are authorized. We reach the same conclusion with respect to G. L. c. 220, § 5, which authorizes a judge, after following certain procedures, to hold a court elsewhere in a county "[i]f it is unsafe or inexpedient to hold a court at the time and place appointed . . . ."

Although the Chief Justice's broadly stated authorization is to hold formal court sessions at the facility, what we decide relates only to the holding of arraignment sessions, including bail hearings. Indeed, the Chief Justice's authorization should be construed as limited to fulfilling the request for permission of the Regional Administrative Justice to hold arraignment sessions at the facility. Evidentiary hearings and trials proposed to be held at a correctional facility present additional considerations, such as the facility's surroundings effect on the impartiality of jurors or the possible intimidation of witnesses. See *Frank v. Mangum*, 237 U.S. 309, 349 (1915) (Holmes, J., dissenting) ("Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere"); *Woodards* v. *Maxwell*, 303 F. Supp. 690,

---

[3]*State* v. *Lane*, 60 Ohio St. 2d 112 (1979), cited by the plaintiff, is inapposite. There, access to the courtroom was conditioned on a number of restrictive procedures. Jurors and spectators were subjected to temporary confiscation of their personal belongings, extensive waiting periods, partial strip searches, and additional security clearances. *Id.* at 120. In *Vescuso* v. *Commonwealth*, 5 Va. App. 59, 66-67 (1987), the court held that conducting a jury trial within the perimeter walls of a medium security prison made a prima facie case of the denial of a public trial. If the plaintiff has made such a case as to his arraignment, the evidence rebuts that prima facie case.

697-698 (S.D. Ohio 1969) (unusual security measures carry obvious implications even to most fair-minded jurors), aff'd sub nom. *Woodards* v. *Cardwell*, 430 F.2d 978 (6th Cir. 1970), cert. denied, 401 U.S. 911 (1971); *State* v. *Lane*, 60 Ohio St. 2d 112, 115 (1979) (trial within maximum security penitentiary does not allow jury to maintain "the delicate posture of impartiality which is a mainstay of our judicial system").

*Judgment affirmed.*