## Helen Kirk vs. Commonwealth.

Suffolk. November 1, 2010. - March 7, 2011.

Present: Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Practice, Civil,* Public trial, Commitment of mentally ill person. *Constitutional Law,* Public trial. *Privacy.*

This court concluded that civil recommitment proceedings pursuant to G. L. c. 123, § 16 (*c*), are presumptively open to the public, and that closure of such proceedings may occur only where the party seeking closure advances an overriding interest that is likely to be prejudiced, where the closure is no broader than necessary to protect that interest, where the trial court considers reasonable alternatives to closing the proceeding, and where the trial court makes findings adequate to support the closure. [69-74]

A District Court judge did not err in denying a plaintiff's motion seeking to close her civil recommitment proceeding to the public, where the plaintiff failed to meet her burden of showing an overriding interest that was likely to be prejudiced absent closure. [74-77]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on March 18, 2010.

The case was reported by *Cowin,* J.

*Robert H. Weber* for the plaintiff.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*Michael J. Grygiel & Victoria P. Lane,* of New York, *& Zachary C. Kleinsasser* for The Patriot Ledger.

*Susan F. Stefan* for Mental Health Legal Advisors Committee & others.

*Lester D. Blumberg* for Massachusetts Department of Mental Health.

Cowin, J. After being found not guilty of murder by reason of mental illness in September, 2007, the plaintiff was committed to Taunton State Hospital (hospital). Prior to the plaintiff's

recommitment hearing[1] before a judge in the Taunton Division
of the District Court Department, the plaintiff filed a motion to
close that proceeding to the public. After a hearing on the mo-
tion, the judge denied the requested relief. The plaintiff petitioned
a single justice of this court for leave to appeal pursuant to
G. L. c. 211, § 3, and the single justice reserved and reported
the matter to the full court.[2]

The plaintiff alleges that she has a right to privacy in her civil
recommitment proceeding, and that the judge erred in denying
her motion for closure. We conclude that, as recommitment pro-
ceedings pursuant to G. L. c. 123, § 16 (*c*), are presumptively
open to the public, and as the plaintiff has not met her burden of
showing an overriding interest that is likely to be prejudiced
absent closure, the judge did not err in denying the plaintiff's
motion.

1. *Background.* The plaintiff was indicted in April, 2005, for
the murder of her four year old son. After a bench trial in Superior
Court, she was found not guilty by means of mental illness or
defect in September, 2007. She was thereafter committed to the
hospital pursuant to G. L. c. 123, § 16 (*b*). In November, 2009,
the hospital notified the Commonwealth of its intent to discharge
the plaintiff, and the Commonwealth filed a petition for re-
commitment. See G. L. c. 123, § 16 (*e*).

Prior to the hearing, the plaintiff filed a motion to close the
recommitment proceeding to the public. The hearing on the mo-
tion took place in the Taunton Division of the District Court
Department, sitting at the hospital, on March 2, 2010.[3] After the
hearing, the judge denied the plaintiff's motion.

---

[1]Persons found not guilty by reason of mental illness or mental defect can be
committed, upon petition to the court having jurisdiction of the criminal case, to
a facility for the care and treatment of mentally ill persons, or to the Bridgewa-
ter State Hospital, for a period of six months. See G. L. c. 123, §§ 1, 16 (*b*).
Such a petition can be filed by the district attorney, the superintendent of such a
facility, or the medical director of the Bridgewater State Hospital. See G. L.
c. 123, § 16 (*b*). Upon expiration of that period, a person may be committed for
additional one-year periods, and such proceedings are to be held in the court
having jurisdiction of the facility or hospital. See G. L. c. 123, § 16 (*c*). We
denominate commitment for additional one-year periods a "recommitment."

[2]We acknowledge the amicus briefs of The Patriot Ledger; the Department
of Mental Health; and the Committee for Public Counsel Services, the Center
for Public Representation, and the Disability Law Center.

[3]The Taunton Division of the District Court Department is authorized to sit

2. *Discussion.* We begin by addressing the question whether proceedings under the relevant recommitment provision are presumptively open to the public and, if so, how trial courts should determine when closure is warranted.

In the context of criminal proceedings, the First Amendment to the United States Constitution guarantees the right of the public to attend trials. *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 575-576 (1980). Public access may not be abridged absent "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 510 (1984).

While neither the United States Supreme Court nor this court has yet addressed the question whether the public's right under the First Amendment extends to civil trials — and we have not addressed that question as it relates to the free speech provision of the Massachusetts Constitution, see art. 16 of the Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution — there is a long-standing presumption in Massachusetts common law that, as a general matter, the public has a right to attend civil trials.

Justice Holmes, writing for this court in 1884, stated that "it is of vast importance to the public that the proceedings of courts of justice should be universally known." *Cowley* v. *Pulsifer,* 137 Mass. 392, 394 (1884), quoting *Rex* v. *Wright,* 8 T.R. 293, 298 (K.B. 1799). The court went on to observe:

> "It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed."

*Cowley* v. *Pulsifer, supra* at 394.

The Supreme Court has traced the common-law tradition of

at the Taunton State Hospital to hear commitment or retention proceedings arising under the mental health statute. See G. L. c. 123, § 5.

openness of civil proceedings from Seventeenth Century English law to the law of the American colonies. See *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 386 n.15 (1979).[4] Citing the Court's discussion of the issue, we have observed that "free access to civil trials is well established under the common law." *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court*, 421 Mass. 502, 507 n.7 (1995), citing *Gannett Co.* v. *DePasquale*, *supra.* See *Globe Newspaper Co.* v. *Commonwealth*, 407 Mass. 879, 884 (1990) ("The tradition in the Commonwealth is that courts are open to the public"); *Globe Newspaper Co.* v. *Superior Court*, 379 Mass. 846, 855, vacated on other grounds, 449 U.S. 894 (1980), quoting F. Pollock, The Expansion of the Common Law 30 (1904) ("Public trials have been the rule at common law since the Anglo Saxons conducted their trials 'like an ill-managed public meeting' ").

We therefore turn to the more limited question whether civil recommitment hearings pursuant to G. L. c. 123, § 16 (*c*), are presumptively open to the public, an issue not addressed by the statute itself.[5] In determining whether the public has a right to attend certain criminal proceedings in the constitutional context,

---

[4]Although not addressing the question whether openness is constitutionally required, the Court observed:

> "For many centuries, both civil and criminal trials have traditionally been open to the public. As early as 1685, Sir John Hawles commented that open proceedings were necessary so 'that truth may be discovered in civil *as well as* criminal matters' (emphasis added). Remarks upon Mr. Cornish's Trial, 11 How. St. Tr. 455, 460. English commentators also assumed that the common-law rule was that the public could attend civil and criminal trials without distinguishing between the two. E.g., 2 E. Coke, *Institutes of the Laws of England* 103 (6th ed. 1681) ("all Causes ought to be heard . . . openly in the Kings Courts"); 3 W. Blackstone, Commentaries \*372; M. Hale, The History of the Common Law of England 343, 345 (6th ed. 1820); E. Jenks, The Book of English Law 73-74 (6th ed. 1967). The experience in the American Colonies was analogous."

*Gannett Co.* v. *DePasquale*, 443 U.S. 368, 386 n.15 (1979).

[5]In 1955, the Legislature amended an older version of the mental health law to state, in the context of commitment hearing rights and procedures, that "[t]he court may at its discretion hold a private hearing at a place convenient for the person served." St. 1955, c. 637, § 8. When an entirely new mental health statute was adopted in 1971, it included a provision stating that whenever a hearing was required in any court for the commitment or further retention of a person, "[t]he person, or the superintendent of the facility or the medical

the Supreme Court has evaluated whether there has been a tradition of accessibility to the proceeding, and whether public access plays a significant positive role in the functioning of the proceedings. See *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 8 (1986). Although we address the issue as a matter of common law, we find this two-part inquiry useful.

Early cases in the Commonwealth illustrate that civil commitment proceedings were not formerly afforded the publicity that has, as a general matter, been characteristic of civil trials in Massachusetts. See, e.g., *Amherst* v. *Shelburne*, 11 Gray 107, 109 (1858) (commitment neither illegal nor irregular despite fact that there was no prior notice to person committed and no recorded order in writing). It is equally clear, however, that lawmakers and courts have moved decisively away from this prior informality and now provide in commitment cases procedural protections characteristic of criminal trials and other civil trials.[6] The new mental health code adopted in 1971 afforded to persons whose commitment is sought, in matters where a hearing is required, the right to counsel, appointment of counsel for the indigent, notice of the hearing, and a right to appeal.[7]

---

director of said state hospital wherein the person is retained, may request either an open or a closed hearing at the facility, said hospital or at the court and the court in its discretion may grant such a request." St. 1970, c. 888, § 4. That sentence was struck from the statute in 1973 and replaced with the current language, "The court may hold the hearing at the facility or said hospital." St. 1973, c. 569, § 2. See G. L. c. 123, § 5.

We discern no sufficiently specific direction from this series of changes, and the parties have suggested none. Thus, the alterations do not aid in the resolution of the question now before us. As the most recent change removes from the statute any mention of the issue of closure, we assume that the Legislature was content to have the common law govern.

[6]Although the governing law has evolved with respect to this matter, the purpose of evaluating the Commonwealth's tradition is not to promote ossification of law but to draw on the aggregate experience of courts in finding a particular rule appropriate across varied fact patterns and circumstances. See *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 8 (1986), quoting *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 605 (1982) ("a 'tradition of accessibility implies the favorable judgment of experience' "). A common-law tradition that has changed to accommodate new insights, and which has reached a new equilibrium in the process, may be as compelling to us as a principle of common law unchanged for centuries.

[7]The new law also repealed the automatic lifetime commitment of persons indicted and acquitted for manslaughter or murder by reason of insanity. Compare G. L. c. 123, § 101 (Ter. Ed.), with St. 1970, c. 888, § 4.

See St. 1970, c. 888, § 4; G. L. c. 123, §§ 5, 9 (*a*). See also Walker, Mental Health Law Reform in Massachusetts, 53 B.U. L. Rev. 986, 998 (1973).

This court has since reinforced the procedural protections afforded in these hearings, holding that civil commitment requires proof beyond a reasonable doubt. See *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 276 (1978). We have affirmed also a patient's right to an emergency hearing if admission resulted from abuse or misuse of the admission process. See *Newton-Wellesley Hosp.* v. *Magrini*, 451 Mass. 777, 783-784 (2008). And we have strictly interpreted the time within which a commitment hearing must be commenced after the filing of a commitment petition. See *Hashmi* v. *Kalil*, 388 Mass. 607, 609 (1983). The trajectory of the law as it relates to civil commitment demonstrates that commitment hearings have been increasingly clothed with the procedural protections and formality typical of other civil (and criminal) trials. As such trials are generally open to the public, this supports a conclusion that proceedings pursuant to G. L. c. 123, § 16 (*c*), are also, as a general proposition, open to the public.[8]

Public access to the commitment proceedings underscores the seriousness of a potential deprivation of liberty and combats tendencies toward informality that may threaten an individual's due process rights. See Commentary to Standard 2.00 of the District Court Standards of Judicial Practice: Civil Commitment (1979) ("Once removed from traditional physical settings normally associated with courts, participants in many hearings may be tempted to conduct themselves in a manner [that] is not fully consistent with the elements of procedural due process"). Commitment hearings are a matter of public interest. See *Cohen* v. *Bolduc*, 435 Mass. 608, 615 n.19 (2002) ("the commitment and treatment of mentally ill persons are matters of public importance"). Likewise, closure encourages skepticism and distrust among the public — and, indeed, among those whose commitment is sought — regarding posttrial proceedings after persons have been acquitted by reason of mental illness. See *Matter of the Commitment of Edward S.*, 118 N.J. 118, 138-139 (1990)

---

[8]We also find no modern source of authority indicating that civil recommitment hearings presumptively should be closed.

(discussing value of openness given public skepticism of acquittal by reason of mental illness and of posttrial commitment proceedings). We conclude that both the legal evolution of civil commitment proceedings and the likely beneficial effects of public access to such proceedings support a conclusion that civil recommitment hearings held pursuant to G. L. c. 123, § 16 (*c*), are presumptively open to the public.[9]

As is the case in criminal trials, the right of the public to attend the hearings is not absolute. See *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 107 (2010), citing *Commonwealth* v. *Martin*, 417 Mass. 187, 193 (1994) ("the public trial right is not absolute, and in limited circumstances a court may bar spectators from certain portions of a criminal trial"). For criminal trials, we apply the standard established by the Supreme Court in *Waller* v. *Georgia*, 467 U.S. 39, 48 (1984), as a means of balancing the interests of the party advocating closure against the public's interest in having access to the trial. See *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court*, 421 Mass. 502, 506 (1995), citing *Commonwealth* v. *Martin*, *supra* at 194. Given the presumption that G. L. c. 123, § 16 (*c*), proceedings are open to the public in Massachusetts, as they are in criminal trials, we conclude that the *Waller* standard should likewise be applied in such proceedings.

Thus, closure may occur where four requirements are met: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure." *Commonwealth* v. *Martin*, *supra*, quoting *Waller* v. *Georgia*, *supra*. The essence of the *Waller* standard is thus that a moving party's position must be sufficiently compelling to overcome a presumption of openness. The findings required for closure must be "particularized and supported by the record." *Boston Herald, Inc.* v. *Superior Court Dep't of the Trial Court*, *supra* at 506, citing *Commonwealth* v. *Martin*, *supra* at 195.

In adopting the *Waller* standard, we recognize that the public

---

[9]Our holding in this case is limited to the question of closure as it regards G. L. c. 123, § 16 (*c*).

disclosure of medical information has the potential to prejudice the therapeutic treatment of a patient. Accordingly, in determining whether the moving party has shown an overriding interest likely to be prejudiced, the judge should take account of any alleged prejudice to a patient's therapeutic treatment that could come about by virtue of a public proceeding. The plaintiff has the burden of demonstrating that prejudice is likely to occur. We emphasize also that it is within the judge's discretion to close a limited portion of a proceeding if the *Waller* standard is satisfied as to that portion.

We turn now to the specific arguments made by the plaintiff in favor of closure. The plaintiff apparently has shifted her position during the course of the appeal. While the plaintiff's brief suggested that the statutory scheme grants her a presumptive right to closure, by the end of oral argument she had moved nearly to the standard we have adopted, i.e., a presumption of openness and a case-by-case balancing of opposing interests to determine whether closure is warranted. The positions taken by the plaintiff and the Commonwealth thus appear now to be quite close. The plaintiff did not explicitly adopt or refer at any point to the *Waller* decision, but her proposed balancing test appears to reflect the *Waller* criteria.

To support her argument that the presumption of openness has been overcome in this case, the plaintiff cites a number of statutes, the first of which is G. L. c. 123, § 36A.[10] That statute provides for the privacy of certain reports of examinations and commitment-related papers, "except in the discretion of the court," and for private dockets in cases of persons believed to be mentally ill. Citing this court's discussion of the legislative history of the provision, the plaintiff argues that the statute evidences a clear legislative concern with the privacy of mentally

---

[10]General Laws c. 123, § 36A, provides in relevant part:

"All reports of examinations made to a court pursuant to sections one to eighteen, inclusive, section forty-seven and forty-eight shall be private except in the discretion of the court. All petitions for commitment, notices, orders of commitment and other commitment papers used in proceedings under sections one to eighteen and section thirty-five shall be private except in the discretion of the court. Each court shall keep a private docket of the cases of persons coming before it believed to be mentally ill, including proceedings under section thirty-five . . . ."

ill persons. See *Borucki* v. *Ryan*, 407 Mass. 1009, 1010 (1990) ("The history of the legislation indicates a legislative intent to protect the privacy of persons subjected to mental examinations by courts . . ."). The statute does not, by its terms, provide for the closure of the court room in commitment proceedings. It applies only to the privacy of reports, papers, and dockets.

Likewise, G. L. c. 123, §§ 5 and 16, the provisions governing commitment hearings and the commitment of those not guilty by reason of mental illness, with which we are concerned, do not speak to closure. The absence of such a closure provision is particularly notable given that the Legislature has elsewhere provided for closure explicitly. See G. L. c. 119, § 38 (hearings related to protection of children, except those pertaining to resuscitation or withdrawal of life-sustaining medical treatment for children in custody of Department of Children and Families, "shall be closed to the general public"); G. L. c. 119, § 65 ("The court shall exclude the general public from juvenile sessions admitting only such persons as may have a direct interest in the case, except in cases where the commonwealth has proceeded by indictment"). Where the Legislature has intended to express a preference for closure, it has thus done so explicitly.

The plaintiff contends also that G. L. c. 214, § 1B, which provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy," compels closure of the proceeding. That statute provides a private cause of action for invasion of privacy and is not relevant to whether a particular recommitment proceeding is open to the public. Cf. *Schwartz* v. *Goldstein*, 400 Mass. 152, 154 (1987) (remedy for physician's violation of patient's privacy is cause of action against physician, not exclusion of evidence at trial). Moreover, "[w]hen the subject matter of publicity is of legitimate public concern . . . there is no invasion of privacy."[11] *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 612 (2000), citing *George W. Prescott*

---

[11]The plaintiff asserts also that the permission she gave to the Commonwealth's psychiatrist to interview her and review her confidential psychiatric records was limited in that she believed the information "would be shared with the court and the other participants" in the proceeding, but not with the public who might attend the proceeding. She urges us to bar testimony by the evaluator hired by the Commonwealth if the hearing should be open. Nowhere in the record does it appear that the plaintiff raised this issue below, and the

*Publ. Co.* v. *Register of Probate for Norfolk County*, 395 Mass. 274, 278 (1985).

On the present record, the judge did not err in denying the plaintiff's motion for a closed hearing. The plaintiff's arguments focus largely on statutes of general applicability, which, as discussed, do not compel the closure of the plaintiff's hearing. The plaintiff also asserts that, to succeed in the recommitment proceeding, she "will have to provide detailed evidence describing her progress in treatment." While a plaintiff bears no burden of providing evidence, it is true that such evidence will be presented in many recommitment proceedings. If the plaintiff's argument in that respect, expressed as it is in general terms, were sufficient, it would allow closure almost as a matter of course, and thus cannot succeed. The plaintiff's argument that the dissemination of personal information disclosed in treatment "may have a devastating effect on her treatment," while a legitimate and serious concern, is not supported by expert opinion or any other evidence. The judge was warranted in finding these assertions insufficient to warrant closure of the proceeding.

The final question is whether the judge was required to make findings in denying the plaintiff's motion. Explicit in the *Waller* standard is a requirement that the judge make findings if he or she concludes that closure is warranted. Where a judge denies a motion for closure, findings are also necessary.[12] The reviewing court must be able to determine the basis for the denial. On appeal in such a case, appellate courts will review the record to determine whether, in light of the appropriate standard, the motion judge abused his or her discretion or made any other error of law. Cf. *Boston Herald, Inc.* v. *Sharpe, supra* at 601 (holding that the court reviews impoundment orders for abuse of discretion or other error of law). We find no such here.

3. *Conclusion.* Civil recommitment proceedings pursuant to G. L. c. 123, § 16 (*c*), are open to the public as a matter of

plaintiff does not direct us to any evidence related to this matter in the record. "An issue not fairly raised before the trial judge will not be considered for the first time on appeal." *Commonwealth* v. *Marchionda*, 385 Mass. 238, 242 (1982), citing *Commonwealth* v. *Lewis*, 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964).

[12]We have not explicitly required findings heretofore when a motion for closure is denied. Thus, despite the absence of findings here, we infer from the judge's ruling that he applied the appropriate factors.

common law, but may be closed where the *Waller* standard is satisfied. We decide that in this case the judge did not err in concluding that the plaintiff had not shown an overriding interest that is likely to be prejudiced absent closure. We remand the case to the county court, with instructions that the order denying the motion for a closed hearing be affirmed.

*So ordered.*